ORRIN HUBBARD *v.* WILLIAM NEWTON.

*Organization of School District. Town Meeting. Warning. Listers.*

In 1858, a school district which had existed many years, and which when organized was called District No. 15, and included certain town lots and "so much of" certain other lots "as belonged to" a certain person, was dissolved by a setting of its territory to adjoining districts. In 1878, under an article in the warning "to see if the town" would "vote to reorganize the district formerly known as District No. 15", it was voted to reorganize it. *Held,* that although there might be difficulty in tracing the lines of the district, yet as it was to be presumed that the parts of lots were defined by deeds on record, and as the boundaries of the entire lots were marked on the original allotment of the town, and were matter of record, the boundaries of the district were so ascertained or ascertainable that the reorganization of the district by such vote on such warning was valid.

After such reorganization, the officers of the district being unable to define its boundaries, the listers set the lands therein to the adjoining districts to which they had

before belonged, and taxes in those districts were assessed on the list in which the lands were so set. The collector of one of those districts demanded a tax so assessed of one of the residents of the reorganized district, which he refused to pay. The collector thereupon distrained his horse. *Held*, that as the act of the listers was ministerial and not judicial, the adjoining district acquired no jurisdiction over residents in the reorganized district, and that the distraint was unlawful.

REPLEVIN for a mare. Plea, general issue. Trial by the court, ROYCE, J., presiding, at the September Term, 1879, on an agreed statement of facts. The facts agreed on were in substance as follows:

In March, 1840, the voters of the town of Georgia voted to set certain specified lots in that town and " so much of lots No. 53, 54, and 55 " as belonged to Alanson Blair " into a separate school district, to be denominated and called ' School District No. 15.' " No alteration was made in the district so created until March, 1858, when a part of District No. 8 was set thereto. No further change was made until 1858, when the district was " discontinued " and set in part to District No. 7, and in part to District No. 8. In 1878, there was an article in the warning of the regular March meeting, as follows: " Article 4. To see if the town will vote to re-organize the district formerly known as District No. 15 in said town." That article was voted on, and it was voted to re-organize the district. On March 14, 1878, the selectmen, at the request of citizens in the district so voted to be organized, warned a meeting of the voters therein; and at that meeting, which was held on March 26, school-district officers were elected, and it was voted to build a school-house. Another meeting was subsequently held, when it was voted to hire money for that purpose, and a committee was elected to superintend the building and to look up the list of the district. No tax was voted, but a teacher was hired, and a school was held, though not of sufficient length to admit of the drawing of public money, and no register was ever returned to the town authorities. The lines of the district were not known to residents in the district, and were never surveyed or determined. After the annual town meeting in March, 1878, the listers and assessors of the town asked the officers of the district " for the boundaries ", but they were unable to tell

Hubbard v. Newtoni

what lands were or ought to be in the district, and none of the residents in the district knew, so the listers and assessors set all the lands in the grand list as they had formerly been set in Districts Nos. 7 and 8. In the latter part of 1878, the defendant, who was collector of District No. 8, demanded of the plaintiff, who was a resident of District No. 15, if such district existed, taxes assessed on the grand list of the town for District No. 8 for that year. The plaintiff refused to pay, claiming to be in District No. 15, and not properly assessed in District No. 8. The defendant thereupon in due form distrained the mare in question, and the plaintiff sued out the writ in the present action. The damage to the plaintiff by reason of the detention of the mare before she was replevied was $4. At the annual town meeting in 1879, a vote was taken under an article in the warning for that purpose, to see if the town " would instruct the selectmen to determine the boundaries of District No. 15 ", and cause a record thereof to be made in the town clerk's office, and lost ; but it was then voted to set to the district certain lands that were supposed to have belonged to the district as originally organized. The parts of lots Nos. 53, 54 and 55, above mentioned, were sold from time to time in different parcels, and the fences so changed that in 1878, to determine how much of them was originally in the district, if that could be determined, reference would have to be made to the deeds thereof ; and, to determine the boundaries of the district the lot lines bounding the original district would have to be surveyed.

The court rendered judgment for the plaintiff for $4 ; to which the defendant excepted. .

*Farrington & Post*, for the defendant.

The article in the warning of the meeting of March, 1878, was insufficient. It should have been to see if the town would vote to set apart a portion of districts 7 and 8 into a separate school district. *Smilie* v. *Stevens*, 41 Vt. 321 ; Gen. Sts. c. 22, ss. 20, 22. The vote did not set out a school district. A vote to re-organize a district once thrown up, is not a compliance with the statute. The vote did not set out the district " by territorial and geographical bounds." No record was ever made in the town

clerk's office. *Cutting* v. *Stone*, 7 Vt. 471; *Gray* v. *Sheldon*, 8 Vt. 402; *Pierce* v. *Carpenter*, 10 Vt. 480; *Sawyer* v. *Williams*, 25 Vt. 311; *Ovitt* v. *Chase*, 37 Vt. 196, 202; *Johnson* v. *Dole*, 4 N. H. 478; *Withington* v. *Eveleth*, 7 Pick. 106. But, if the naked vote was sufficient and under a proper warning, yet, no action was taken by the town to carry it into effect by a record of boundaries; and the listers were justified in their action. *Fairbanks* v. *Kittredge*, 24 Vt. 9; *School District* v. *Kittredge*, 27 Vt. 650. The plaintiff's remedy, if he has any, is by action against the listers. *Fairbanks* v. *Kittredge, supra*.

*G. A. Ballard*, for the plaintiff.

The article in the warning was sufficient, and the vote sufficiently defined the limits of the district. The sense and reason of the statute require nothing more than that the subject for consideration should be indicated with reasonable certainty. *Ovitt* v. *Chase*, 37 Vt. 196; *Moore* v. *Beattie*, 33 Vt. 219; *Weeks* v. *Bachelder*, 41 Vt. 317; *Hall* v. *School District*, 46 Vt. 19; *Alden* v. *Rounseville*, 7 Met. 218; *Pittsburg* v. *Danforth*, 56 N. H. 272; *Perkins* v. *Crocker*, 109 Mass. 128. The selectmen, in issuing notices, simply perform a ministerial duty, and the inhabitants cannot be limited in their action by the phraseology of the notice, provided the statement of the objects of the meeting is substantially correct. *Bull* v. *Warren*, 36 Conn. 83.

Section 20, c. 23, Gen. Sts., makes it the duty of the town to define and determine the limits of school districts; but when this district was disorganized, it was composed of certain lots and parts of lots, and when re-organized its boundaries were as definite, and as particularly described as at the time of its dissolution. The lots were a matter of record. It has been repeatedly held that to set an individual and his real estate from one district to another was a sufficient description and boundary. See cases *supra*. The acts of the listers do not relieve the defendant from liability. *Ovitt* v. *Chase, supra*.

The opinion of the court was delivered by

REDFIELD, J. School District No. 15 in Georgia was created and organized in March, 1840. In March, 1858, this district was

dissolved, by setting its territory to districts numbered 7 and 8, in said town. In March, 1878, under an article in the warning, viz : " Article No. 4. To see if the town will vote to re-organize the district formerly known as District No. 15 in said town," the town voted to re-organize said district "formerly known as District No. 15." Such former district had existed for near twenty years, with known and fixed boundaries. The town voted to re-organize it, *i. e.*, to give it organism as a legal entity. It included certain lots of land specifically named, and such parts of three other lots as were owned by Alanson Blair in March, 1840 ; its boundaries were original lot lines, traced and marked in the original allotment of the town, and on the records of the town. That portion of lots 53, 54, and 55 which were owned by Alanson Blair will be presumed to have been defined by deeds on record in said town ; and capable of being easily traced. School districts are often formed by constituting certain farms and lots of land a school district. It would work immeasurable mischief, if courts should hold that the school districts had had no organism or existence— that contracts providing for schools and taxes assessed to support them were void, because there was labor and difficulty in tracing the exact lines of the farms of which it was composed. The court strive to give effect to the vote of the town, and make it available to the end designed, rather than cipher, and strain a point to overturn it. These municipal divisions of the State are created to work out beneficial results to the people in education and other vital matters, to the well-being of the State ; and their acts should not be too sharply criticised. They are the language of plain men for practical purposes. And we think the boundaries of this district could have been ascertained without great labor or uncertainty.

II. The act of the listers in placing the plaintiff and his property in the wrong district was ministerial, and not judicial, and could not give District No. 8 jurisdiction over the plaintiff ; and although the listers would be liable for any wrong done to the plaintiff, yet, the tax against the plaintiff in District No. 8 was unauthorized, and the distraint of the plaintiff's horse unlawful. *Woodward* v. *Isham*, 43 Vt. 123.                    *Judgment affirmed.*